# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**ALI M. MOHAJER**
1331 Connecticut Avenue, NW
Washington, DC 20036
Tel : (202) 476-9627

       Plaintiff

v.

**UNITED ARAB EMIRATES**
C/O Ambassador Yousef Al Otaiba
Embassy of the United Arab Emirates
3522 International Court, NW, Suite 400
Washington, DC 20008

**ADEL AL SHIRAWI**
Floor 22, Crown Plaza Tower, Sheikh Zayed Road
Dubai, U.A.E.

**DUBAI WORLD**
C/O CITYCENTER
Attn : Legal Department
3730 Las Vegas Blvd, Las Vegas, NEVADA 89158

**DP WORLD**
Attn : Legal Department
131 Matthews Station Street, Suite 2B, Matthews NC 28105

**ISTITHMAR WORLD PJSC**
C/O Barneys New York, Inc.
Attn : Legal Department
575, Fifth Ave, Floor 11, New York, NY 10017

**BARCLAYS BANK PLC**
Attn : Legal Department
2001 K Street NW., Washington DC, 20005

**MENON FOUNDATION LTD.**
4495 West Hacienda Ave, Suite 1, Las Vegas, NV 89118

**SUNNYDALE GROUP HOLDINGS LTD.**
Floor 22, Crown Plaza Tower, Sheikh Zayed Road,
Dubai, U.A.E.

**PHILIPPE PIERRE BOUTINOT**
Floor 22, Crown Plaza Tower, Sheikh Zayed Road,
Dubai, U.A.E.

       Defendants.

FILED
FEB 23 2011
Clerk, U S. District & Bankruptcy
Courts for the District of Columbia

Case: 1:11-cv-00417
Assigned To : Roberts, Richard W.
Assign. Date : 2/23/2011
Description: Pro Se Gen. Civil

1

# CLASS ACTION COMPLAINT

COME NOW Plaintiffs ALI MOHAJER and CONTINENTAL PETROLEUM COMPANY, bring this action individually and on behalf of all others similarly situated against Defendants, the UNITED ARAB EMIRATES and DUBAI WORLD and ISTITHMAR WORLD PJSC and ADEL AL SHIRAWI and SUNNYDALE GROUP HOLDINGS LTD. and BARCLAYS BANK and MENON FOUNDATION LTD. and PHILIPPE PIERRE BOUTINOT and allege as follows:

## NATURE OF THE CASE

This is a Class action lawsuit brought by citizens of the United States or elsewhere who were defrauded by or through the UAE financial system that seeks to prey upon foreign investors and does by creating a welcoming atmosphere and allowing business money or project in which the UAE seeks to profit from by using its agents and officials, seek to "hijack" foreign investors assets and contracts for their own benefit and then to add insult to injury use the UAE court system in an illegal fashion to "set up" the foreign investor by issuing contrived criminal charges through UAE agents, that causes the passport of the foreign investor like Plaintiffs, to be surrendered and their bank accounts frozen. The UAE court then convicts in many if not all instances the foreign investor forever tarnishing the credibility and image allowing the UAE to walk away with Hundreds of millions of dollars at the expense of "trumped" up charges and human rights violations. Many foreign investors were illegally charged and then found guilty through the fabricated facts of the defendants agents

## JURISDICTION AND VENUE

1. This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1330 (a); 1331; and 1332 (a)(2); the Alien Torts Claims Act (ATCA) 28 USC §1350; Plaintiffs and the Class also invoke the supplemental jurisdiction of this Court with respect to claims based upon the laws of the District of Columbia, pursuant to 28 U.S.C. § 1367.

2. This court has Personal Jurisdiction over Defendants because they are actively doing business in the District of Columbia and engaged in the advertising, marketing, financing, or selling of properties that are represented to have proper title when they do not which information was concealed, resulting in the reliance of the Plaintiffs and the Class, or otherwise transferring monies obtained from the illegal activities in the UNITED ARAB EMIRATES through BARCLAYS BANK PLC in the District of Columbia and maintain offices and transact business in the District of Columbia consistent with constitutional due process.

3. Venue is appropriate in the District of Columbia pursuant to 28 USC §1391 because Defendants' commercial acts or omissions giving rise to this action substantially or materially, in whole or in part, involved or occurred in the District of Columbia and/or Defendants maintain offices and transact business in the District of Columbia.

## THE PARTIES

4. Plaintiff, ALI MOHAJER, is a citizen of the United States of America and currently resides in the District of Columbia.

5. Plaintiff Continental Petroleum Company,(hereinafter "CPC") a company established in February 2006 and formed in the KISH free zone of Iran and headquartered in Dubai. Mr. Mohajer, CPC's principal, was doing business as CPC prior to its formal creation in 2006.

6. Defendant, the UNITED ARAB EMIRATES (hereinafter referred to as "UAE") dba "" aka "CITYCENTER" and "Barney's New York, Inc." and "Mandarin Oriental Hotels Group" and "Loehmann's Holdings, Inc." and "Inchcape Shipping Services" and "Perella Weinburg Partners" and "GLG Partners, Inc." and "Arcapita Bank" and "Standard Chartered Bank" and "DUBAI WORLD" and "ISTITHMAR WORLD"(hereinafter collectively referred to as "UAE") is a federation of Emirates in the Arab peninsula acting under the Sovereignty. Under this shield of Sovereignty the UAE has promoted allowed and benefited from its agents who commit fraud against innocent investors in order to hijack their assets.

3

DUBAI WORLD ("DW") is committing or assisting in illegal acts to harm members of the public and U.S. citizens, including the Plaintiffs and the Class. The "UAE" maintains an "embassy" in the United States located at 3522 International Court, NW, Suite 400, Washington, DC 20008.

MENON FOUNDATION (hereinafter "MENON"), is a company headquartered in Duabi and registered in Las Vegas operating through a pretext concealing its fraudulent masters, Al Shirawi and the UAE, headquartered in Dubai, UAE.

7. Defendant Al- Shirawi is a resident of Dubia doing business in the US through Menon Foundation and other business entities.

I.      DEFINITIONS

"BVI" means the British Virgin Islands.

"CPC" means Continental Petroleum Company, a company established in February 2006 and formed in the KISH free zone of Iran and headquartered in Dubai. Mr. Mohajer, CPC's principal, was doing business as CPC prior to is formal creation in 2006.

"DAR" means DAR Investment Holdings, LLC, an global investment company doing business in the UAE and throughout the world, their principals, agents and representatives.

"Dubai" means the emirate of Dubai, including its agents, government, representatives and officials.

"DW" means Dubai World, a wholly owned investment company of the UAE, its principals, agents and representatives.

The "Fraudulent Bank Notes" means two fraudulent bank guarantees respectively dated 1/19/06 and 4/23/06 in the total amount of 1 Billion Euro, that were provided and guaranteed by the UAE, Mr. Shirawi and Menon.

"IW" means Istithmar World, a wholly owned company of the UAE, their principals, agents and representatives.

"Menon" means the Menon Foundation, a nonprofit entity, registered and headquartered in the state of Nevada for the benefit of Mr. Shirawi and the UAE, their principals, agents and representatives.

"Mr. Boutinot" means Philippe Pierre Boutinot, a principal of Menon, acting at the behest, direction, control and benefit of Mr. Shirawi and the UAE.

"Mr. Menon" means Gopinatan Karankara Menon, a principal of Menon, acting at the behest, direction, control and benefit of Mr. Shirawi and the UAE.

"Mr. Mohajer" means Ali Mohammed Mohajer, a citizen of United States of Amerrica and principal of CPC.

"Mr. Shirawi" means Adel Al Shirawi, a resident of UAE, a 50% shareholder of Sunnydale, formed by the UAE that was to be used to transfer funds from Menon. At all times relevant and upon information and belief, Mr. Shirawi controlled or held decision-making responsibilities in IW, DW, DAR, TAMWEEL, Sunnydale and Dubai. At all times relevant, the Ruler of Dubai supervised and directed Mr. Shirawi.

"NPC" means National Petroleum Company, International ltd., which is a wholly owned subsidiary of and acting on behalf of the Petroleum Ministry for Iran, their principals, agents and representatives. NPC is headquartered in London.

"Our Clients" means individually and collectively Mr. Mohajer and CPC.

"Sunnydale" means Sunnydale Group Holdings, LTD , a BVI company, to be used as a conduit for funds from Menon to benefit Mr. Shirawi and the UAE, their principals, agents and representatives.

"The Ruler of Dubai" means the head of State for the Emirate of Dubai.

"UAE" means the United Arab Emirates, including its agents, government, representatives and officials. The Emirate of Dubai is one of the seven emirates forming UAE.

II.     NOTABLE BUSINESS RELATIONSHIPS

1. IW, DW, DAR, and Dubai were all involved or sought to benefit in the transaction mentioned herein. At all times relevant, IW, DW, DAR were entities owned or controlled by UAE, Dubai and Mr. Shirawi, as the Vice Chairman of IW.

   2. At all times relevant, Mr. Shirawi controlled or held decision-making responsibilities in IW, DW, DAR and DUBAI. At all times relevant, the Ruler of Dubai supervised and directed Mr. Shirawi.

3. At all times relevant, Menon was represented as the capable lender provided by Mr. Shirawi and the UAE, and acting as agents for Sunnydale, IW, DW, DAR, Mr. Shirawi and the UAE, to provide the financing for the said Oil and Gas Projects. Mr. Shirawi on behalf of the government of the UAE, "vouched" and guaranteed the funds and the ability of Menon to provide the funds for the Oil and Gas Projects in Iran, including the 1 Billion Euro initial financing that was eventually provided, albeit fraudulently in the form of fraudulent bank notes, on behalf of Sunnydale, IW, DW.

4. DAR, Mr. Shirawi and the UAE, Menon provided the Fraudulent Bank Notes intending to harm our clients.

5. At all times relevant, the UAE, Dubai, Mr. Shirawi through Menon and its principals, Mr. Boutinot and Mr. Menon, maintained offices together and were for the purposes of this letter, the alter ego of the other, jointly benefiting from wrongful acts stated herein related with its commercial activities and ties to the U.S.


III.    FACTUAL BACKGROUND

7. In November 2005, Mr. Mohajer and Mr. Shirawi met for the first time. Prior to that date, Mr. Mohajer had met Mr. Menon and Mr. Boutinot in Dubai on numerous occasions. Mr. Shirawi

introduced Mr. Boutinot as his business partner and vice president of the Menon Foundation, which shared the same address, office and contact numbers.

8. Thereafter, on numerous occasions these individuals discussed Oil and Gas Projects in Iran. During this time, Mr. Mohajer was doing business as CPC although the formal entity was not created until 2006.

9. Through these discussions, Mr. Shirawi desired to test the relationships and ability of Mr. Mohajer to produce such an investment opportunity to him and the UAE. Mr. Shirawi expressed his authority on behalf of the UAE through several business entities, including DAR, IW, TAMWEEL and Menon.

10. On November 25, 2005, Mr. Shirawi along with Mr. Boutinot entered Iran with Mr. Mohajer to discuss the Oil and Gas Projects with NPC (See attached as Exhibit B-Passport of Mr. Shirawi and Mr. Boutinot). The three of us entered Iran on November 25, 2005 by Emirates Airline at IKA Tehran Airport, and spoke with the Director of Finance of NPC on the following day. These discussions lasted 2 days that resulted in a tentative agreement for the financing of several Oil and Gas Projects to be provided by the UAE through Mr. Shirawi and Mr. Menon.

11. Thereafter, the parties began establishing their respective agreements for these projects. On or about February 2, 2006, Menon, issued it letter of intent to Petroleum Ministry of Iran to provide financing in the amount of 7 Billion Dollars, that unbeknown to our clients, was feigned as Menon never intended to provide the financing despite its representations along with Mr. Shirawi's guarantees (See Exhibit C- Menon Letter to Petroleum Ministry of Iran).

12. As a result, the parties entered into an agreement and then met again pursuant to a letter dated March 18, 2006 from NPC to discuss the Agreement. (See Exhibit D- ltr. from NPC).

13. The March 18, 2006 letter also establishes the representations and duties between the parties for the Oil and Gas Projects in Iran that were approved by the NPC and agreed and accepted by Shirawi and Menon. On or about March 29, 2006, the CPC, Menon and Sunnydale, by and

through the individuals mentioned herein, entered into a business cooperation agreement detailing their respective duties to fulfill the obligations involving the Oil and Gas Projects in Iran approved by the NPC totaling gross financing in the amount of 7 Billion Dollars. (See attached as Exhibit E –Cooperation Agreement).

14. Menon was specifically "hand picked" by Mr. Shirawi and the UAE, to provide financing while CPC would provide the expert technical consulting services to construct and complete the oil and gas projects. CPC was to be compensated in the amount of 5% of the gross financing for the Oil and Gas Projects, therefore our clients would have received $350,000,000 in commissions pursuant to the Agreement.

15. Thereafter, NPC requested documentation proving the financial abilities of Menon. At this meeting, Mr. Shirawi and the UAE represented and guaranteed the ability of Menon to provide the financing to begin the projects mentioned. In what was represented as a good faith gesture, Menon provided the Bank Notes to show its sincerity and acceptance of the Agreement. Our clients and the NPC relied upon the statements and documents provided by Mr. Shirawi and Menon to enter into the said Agreement.

16. On or about June 15, 2006, Menon provided Bank Notes to the NPC and provided copies to CPC. However, to the shock and dismay of CPC and NPC, Menon provided Fraudulent Bank Notes. (See attached as Exhibit F- False Barclays Bank Guarantees). The Fraudulent Bank Notes were presented to Iranian authorities in furtherance of the agreement, that unbeknownst to our clients and the Iranian authorities, were to serve a malicious purpose.

17. As can be imagined, there was an immediate stop to the Agreement by the NPC. It should be noted that at the time Mr. Shirawi guaranteed and "vouched" for Menon's ability to produce the financing to the NPC, either Mr. Boutinot or Mr. Menon who was convicted by Abu Dhabi Court, had been found guilty of economic fraud by the UAE, yet this information was concealed to coordinate and perpetuate the fraud for what can only be a malicious intent towards our clients.

18. Additionally, the close working relationship of these convicted persons sharing the same office that many suggest still continues, while being shielded by the UAE, raises immense concerns of a criminal conspiracies that victimized our clients and exposes such harm to foreign investors.

a.      Concealment of the Fraud Orchestrated by the UAE and its Agents.

19. During the next three months, Mr. Shirawi through his official office, deeply apologized to Mr. Mohajer and stated he would replace the Fraudulent Bank Notes.

20. During this time, Mr. Boutinot and Mr. Menon continued business operations as Menon Foundation, through the offices and to the benefit of Mr. Shirawi and the UAE.

21. However, this was simply a pretext to conceal the wrongdoing. Rather than receiving the financing promised to correct the embarrassment, UAE orchestrated a twisted sense of justice and initiated criminal charges against Mr. Mohajer for making death threats. The UAE, through its agents, consisting of two U.S. citizens obtained for the sole purpose to destroy the credibility of Mr. Mohajer, initiated the false criminal charges.

22. The two naturalized U.S. citizens, Maher Lahloh Antoan and Gasper Reymon Gonzales provided the wrongful cover to attack, jail and wrongfully detain Mr. Mohajer for nearly 4 years acted at the direction and control of the UAE.

23. The UAE through these U.S. citizens, swore out false statements causing the wrongful arrest of Mr. Mohajer that sabotaged the Agreement with NPC causing irreparable and substantial losses. The Dubai court, criminal case no. 2007/1563, was based on Mr. Mohajer's alleged "threat to kill" two U.S. citizens should 1 million dollars not be paid.

24. In a twisted turn of events, rather than being applauded for being a "whistle blower", Mr. Mohajer was blamed for the fraud. Rather than being assisted by the UAE for exposing the illegal acts of Mr. Shirawi and his agents, the UAE took actions to conceal this fraud on behalf of Mr. Shirawi and his agents.

25. By charging and prosecuting Mr. Mohajer under false pretenses, the UAE sought to destroy his credibility and with it any media storm that would follow for such a substantial fraud involving the Government officials.

26. The UAE issued an Official Order to arrest Mr. Mohajer along with the immediate deportation of the CPC chairman including the cancellation of his UAE residence visa. Mr. Mohajer's passport was also confiscated to restrict his movement and his departure. 27. The UAE then issued the Order for the false arrest of Mr. Mohajer (See attached as Exhibit G-Arrest Order). The wrongful conduct even expanded to include an assassination threat against Mr. Mohajer and the chairman of CPC.

28. Unfortunately, these events are not new to the UAE known for barbaric business tactics towards foreign investors. One only needs to review the video of a foreign citizen cattle prodded by royal family members or the U.S. citizen tortured and falsely imprisoned for three months to see how foreign investors are treated in the UAE.

29. During Mr. Mohajer's wrongful detention, Mr. Shirawi was finally arrested for fraud by the government of the UAE on other investment charges. Mr. Shirawi allegedly departed from TAMWEEL, but remained a board member and top executive with Dubai's state owned IW. IW allegedly investigated Mr. Shirawi and Feras Kalthoum. Mr. Shirawi, according to the Dubai Court Ruling on May 30th, 2010 was convicted to 3 years jail term.

30. Abu Dhabi Commercial Bank (ADCB) terminated its chairman and several board members, for fraud, who were not named but upon information and belief include Mr. Shirawi and Kalthoum for fraud.

31. There is strong evidence that IW and ADCB, including TAMWEEL, participated in illegal and tortuous activity with effects in the U.S. through Mr. Shirawi and the UAE.

32. ADCB is involved in litigation in the U.S.A. against Morgan Stanley for alleged mortgage fraud clearly showing the U.S. courts jurisdiction over conduct involving the UAE.

33. It is clear that the companies, solely owned by the UAE with Mr. Shirawi at the helm, have sufficient contacts with the United States on a continuous and systematic manner that would allow jurisdiction in the US courts.

34. Additionally, the policy and practice of obtaining assets through the use of manufactured criminal charges and convictions through hired false witnesses to bury the victim in shame and jail, is a policy and practice of the UAE used to unjustly obtain assets of foreign investors.

b.     Vindication of the False Charges and Fraud.

35. Despite having the cards stacked against him, Mr. Mohajer through sheer determination and wit was able to vindicate his actions and overcome the false charges and subsequent trials against him.

36. Ironically, the Dubai court, criminal case no. 2007/8582, rendered a decision against Mr. Boutinot and Mr. Menon for providing the 1 Billion Euro Fraudulent Bank Guarantees to cause harm and did cause harm to the Directors of CPC. The UAE court also sentenced these two agents of Mr. Shirawi and the UAE, to an alleged jail sentence and revoked their resident status.

37. Upon information and belief, these individuals are under the protection of the UAE and have never been jailed. The UAE court also decided Mr. Shirawi was not within its jurisdiction and left the architect of the fraud untouchable in his homeland. More troubling is that Mr. Shirawi was found guilty of embezzlement in an unrelated business matter and received what was publicly announced as a 3 year jail sentence only to evade such sentence and received a promotion within the UAE business empire to conduct and coordinate further harm to foreign investors, with his cohorts, Mr. Boutinot and Mr. Menon.

## COUNT I
### (Violation of International and Customary Law recognized by the Civilized World)

39. Plaintiffs and the Class reallege paragraphs 1 through 88 of this Complaint as set forth in full.

40. Defendants conduct, jointly, individually and in concert described above constitute violations of international law and the law of nations as it evolved and exists among the nations of the world today.

## COUNT II
### (Common Law Fraud)

41. Plaintiffs and the Class reallege paragraphs 1 through 129 of this Complaint as set forth in full.

42. Defendants' conduct was intentional or reckless in that representations were made that were false and knowing them to be false.

43. Defendants' conduct were intentional and intended to cause harm and did cause harm to deceive and harm Plaintiffs.

44. That there is casual connection between the wrongful conduct of the Defendants and the harm to the Plaintiffs.

45. As a result of the Defendants' conduct, jointly and individually, Plaintiffs have suffered economic losses, emotional distress, humiliation and personal indignity, emotional pain, embarrassment, fear, anxiety, and anguish.

## COUNT III

MALICIOUS PROSECUTION

## COUNT IV

ABUSE OF PROCESS.

## COUNT V
### (Civil Conspiracy)

46. Plaintiffs reallege paragraphs 47 through 54 of this Complaint as set forth in full.

47. Defendants' knowingly and willfully provided substantial assistance, sponsored and partnered with each other to deliberately and maliciously commit the wrongful acts and interfering and depriving property rights to the Plaintiffs.

48. Defendants' aided and abetted each other by providing each other material aid and

49. Resources to interfere in the rights of property to Plaintiffs.

50. Defendants conspiracy and illegal agreements, as well as independent acts, caused the injuries to the Plaintiffs. Therefore, Defendants are jointly and severally liable for damages under applicable law, federal statutory laws including the laws of the District of Columbia.

51. Defendants performed acts within the scope of their offices, employment and/or agencies, which provided material support and resources to their illegal acts of issuing fraudulent bank notes causing substantial economic harm.

52. Defendants are directly or vicariously liable for their actions or the actions of their co-defendants, members or subsidiaries because they controlled and/or acted in concert with in providing material support to interfere and deprive the Plaintiffs their rights to property.

53. For the reasons stated above, Defendants are jointly and severally liable to Plaintiffs for statutory and common law claims as stated herein.

## COUNT VII
### (Unjust Enrichment- HIJACKING ASSETS/ Fraudulent Scheme)

54. Plaintiffs and the Class reallege paragraphs 1 through 101 of this Complaint as set forth in full.

55. Defendants have benefited from its unlawful acts and it would be inequitable for Defendants, jointly and independently, to be permitted to retain any ill-gotten gains resulting from the sale, financing, transactions, use, interference or denial of the rights to property belonging to Plaintiffs and the Class.

13

## COUNT VIII
### (Violation of Federal Statute- Lanham Act Violation)

56. Plaintiffs reallege paragraphs 1 through 64 of this Complaint as set forth in full.

57. The Lanham Act provides that: "any advertising or promotion that misrepresents the nature, characteristics, qualities or geographic origin of goods, services or commercial activities" (Lanham Act, 15 U.S.C.A. § 1125(a)).

58. Defendant has violated the Lanham Act and has injured or will continue to injure members of the public in the United States, and elsewhere based on its false portrayal of its existence, status, conduct towards and ownership of various commercial enterprises and dealings that includes luring unsuspecting members of the public, foreign investors to seek to do business with UAE agents and business that are designed to hijack the property and assets of the foreign investor rather than provide the fair and honest services.

## COUNT X
### (Intentional Interference With Prospective Business Advantage/Contract)

59. Plaintiffs reallege paragraphs 1 through 111 of this Complaint as set forth in full.

60. Negligent or intentional willful acts of Defendants towards Plaintiffs.

61. Defendants' conduct was calculated to cause harm to property and the business advantages or contracts arising from the property belonging to the Plaintiffs.

62. Defendants' conduct was committed with the unlawful or improper purpose to cause such damage, without justification, and with actual damage resulting to the Plaintiffs.

## DEMAND FOR JURY

Plaintiffs individually and on behalf of those similarly situated demand trial by jury on all issues.

Respectfully submitted,

*[signature]*

**ALI M. MOHAJER**
1331 Connecticut Avenue, NW
Washington, DC 20036
Ph. 202-476-9627
petroglobe@gmail.com

## VERIFICATION

By signing below, I swear under penalty of perjury that the foregoing statements contained in this Complaint are true and correct and based on my personal knowledge.

*[signature]*
_____
ALI MOHAJER, individually ~~and on behalf of CONTINENTAL PETROLEUM COMPANY~~.